**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| SHERETTA MURRAY, individually and on behalf of all those similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>TIPS, INC.<br><br>  Defendant. | C.A. No.: 1:18-cv-00937 |

**JOINT RENEWED MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

The above-named Parties, by and through their undersigned counsel of record, hereby file this Joint Renewed Motion for Preliminary Approval of Settlement Agreement.

**I.   INTRODUCTION**

This class and collective action was filed against Defendant on April 21, 2018 in this Court. Plaintiffs have alleged that Defendant failed to properly reimburse its delivery drivers and provide meal and rest breaks to its hourly employees.

Subject to Court approval, the Parties have agreed to settle this action on a hybrid FLSA and FED. R. CIV. PROC. 23 class basis for a payment of $545,000.00, inclusive of attorney's fees and litigation costs. The settlement is the result of extensive negotiations between the Parties, including a full-day and structured mediation before an experienced wage and hour mediator and also has attempted to address each of the concerns previously raised by the Court.

As discussed herein, the Settlement meets all the criteria for preliminary approval. To

effectuate the settlement and distribute funds to settlement class members, the Parties request that the Court (1) preliminarily approve the Settlement Agreement (attached as Exhibit 1), (2) certify the proposed classes for settlement purposes, (3) sign the proposed Preliminary Approval Order (Exhibit 2), (4) approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement (attached as Exhibit 1-A), and (5) set a date for a final approval hearing more than 100 days after the order of preliminary approval. The settlement is non-reversionary, i.e., Defendants will pay the entire $545,000.00, upon approval of the Parties' settlement agreement.

## II.  STATEMENT OF FACTS

### A.  Procedural and Litigation History

This case was originally filed on April 21, 2018, by and on behalf of Jeremy Fletcher, individually and on behalf of similarly situated persons. *See* Doc. 1. Mr. Fletcher worked as a pizza delivery driver for Defendant and sought to certify a collective action of other similarly situated drivers, seeking damages for allegedly improper mileage reimbursement rates. *See* Doc 1. About five months later, the Parties jointly sought to conditionally approve the collective action and to send notice. *See* Doc. 20. The Court granted that request, modifying the proposed notice, on October 2, 2018. *See* Doc. 26. At some point after the sending of the notice, Mr. Fletcher expressed to Plaintiffs' counsel that he no longer wished to participate as a Plaintiff[1] and Sheretta Murray volunteered and was substituted as the named Plaintiff in place of Mr. Fletcher, *See* Doc. 63 and Doc. 64.

The Parties thoroughly investigated their claims and defenses and ultimately reached a

---

[1] Mr. Fletcher's FLSA consent has been withdrawn; however he will be a member of the meal and rest break class. Therefore, Mr. Fletcher will still receive the class notice, have the opportunity to opt in/out of this proposed class and to raise objections to the settlement.

2

settlement of this matter through the assistance of mediator Todd McNamara of Denver, Colorado. As a result of the Parties' evaluation of the claims, their mediation session, and to facilitate this settlement, the Parties' hereby stipulate to certification of the claims covered by the settlement, for settlement purposes only, under FED. R. CIV. PROC. 23, and as reflected in Plaintiff's recently-filed amended complaint.

The Parties then sought preliminary approval of the settlement they negotiated as a result of mediation with Mr. McNamara and subsequent negotiations. *See* Doc. 87. The Court held a hearing on that request on January 23, 2020, during which the Court expressed some concerns with the proposed settlement, and denied the request for preliminary approval, without prejudice to the Parties addressing those concerns in a renewed request for preliminary approval.

The Parties, through counsel, then conferred several times by email and telephone in an effort to address the concerns the Court has raised. As a result of those discussions, the Parties now submit this Joint Renewed Motion for Preliminary Approval. Simultaneous with this Motion, the Parties also request that the Court issue an order *nunc pro tunc*, deeming the prior dismissal of the state law claims with prejudice to have been without prejudice.

### B.   Background of Settlement Negotiations

The Parties conducted an investigation of facts during the prosecution of the litigation, which included the formal and informal exchange of information. Counsel for the Parties also analyzed the likelihood of successfully trying the case on a class-wide basis. The Parties further reviewed records and interviewed witnesses. Numerous tele-conferences were held, and emails exchanged between representatives of the Parties in order to attempt to resolve the claims. The Parties also conducted a full-day mediation.

Defendant denied and continues to deny any liability or wrongdoing of any kind associated

3

with the claims alleged by Plaintiff, and further denies that, for any purpose other than settling this matter, this action is appropriate for class treatment. Plaintiff, on the other hand, asserts that Defendant failed to comply with federal minimum wage requirements embodied in the FLSA and Colorado's meal and rest break law.  Class Counsel understands Defendant's position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof.  Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

Accordingly, in the interest of resolution, representatives of the Parties participated in lengthy settlement negotiations and mediation and ultimately reached a Settlement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendant's defenses, and the benefits to be received by Class Members.  Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class and is fair and reasonable.

### III.     THE PARTIES' SETTLEMENT

#### A.     The Settlement Terms

The Settlement Agreement contemplates two classes of individuals who are settling their claims.  The first is those who have previously opted-in (the "FLSA Settlement Class," whose identities and recovery amounts are reflected in Doc. 87-3) and the second class is those who did not previously opt-in (the "Meal and Rest Break Settlement Class").  The first class, those who have opted-in (which includes Ms. Murray), would release all claims they have or may have related to any allegedly improper mileage reimbursement rate and the missing of any meal and/or rest breaks, under either or both the FLSA and Colorado state law.  Under the amended settlement agreement procedures and notice, these individuals will not only receive notice of the named plaintiff substitution, but also have the opportunity to opt-out and object to the settlement.

Because those who have not opted-in (the members of the second class) cannot release their FLSA claims, the second class of individuals would release only their claims under Colorado state law related to allegedly missed meal and rest breaks. The Settlement Agreement defines these two Settlement Classes as:

> "FLSA Class Members" or "FLSA Settlement Class Members" are the Colorado-based delivery drivers employed by Tips, Inc. from April 21, 2015, to July 1, 2019 ("Class Period"), who have previously filed consents opting-in to this matter.
>
> "Meal and Rest Break Class Members" or "Meal and Rest Break Settlement Class Members" means the Colorado-based delivery drivers who, as of July 1, 2019, worked 32 hours a week or more at least half of the weeks during their employment with Defendant, and who do not elect to exclude themselves from this settlement.

The members of these two subclasses are sometimes referred to in this Motion collectively as "Settlement Class Members."

The Settlement provides for a $545,000 settlement amount. The Settlement is non-reversionary. All required payments will be made from this amount, including all payments to Settlement Class Members, attorney's fees and litigation expenses, all payroll and withholding taxes, excluding all employer payroll taxes. The $545,000 does not include the Settlement Administrator's fees which Defendant will pay as well. Plaintiff's counsel has agreed to seek no more than $194,850.00 for attorney's fees and litigation costs.

The Settlement Administrator will send a notice of preliminary approval and settlement to each FLSA Settlement Class Member and each Meal and Rest Break Class Member. Both FLSA Settlement Class Members and Meal and Rest Break Class Members will have 60 days after mailing of the notice to file objections, and are also provided an opportunity to appear at the final approval hearing to be set by the Court.

To address any concerns about the substitution of Ms. Murray in place of Mr. Fletcher as the named Plaintiff, the notice, which will also be sent to those who have opted-in previously (the

FLSA Settlement Class Members), will briefly explain that Ms. Murray was substituted and allow those who have previously opted-in to revoke their opt-in consent. If those who have previously opted-in fail to do so by the deadline, they will be deemed to have affirmed their previously-granted consent.

### B.  The Settlement Payments

The amount allocated to settlement payments for both settlement classes will be distributed on a pro-rata basis based on numerous factors, including (1) the total number of miles driven by each FLSA Settlement Class Member, the reimbursements each FLSA Settlement Class Member received from Defendant, and as reflected in Doc. 87-3,(2) the number of weeks worked by participating Meal and Rest Break Settlement Class Members, and (3) a minimum payment that will be provided to non-participating Meal and Rest Break Settlement Class Members unless they choose to opt-out of the settlement. Settlement checks that cannot be delivered or are not cashed after 180 days of mailing will be donated to designated *cy pres* charitable organizations.

## IV.  ARGUMENT

### A.  The Court Should Preliminarily Approve The Settlement

Fed. R. Civ. P. 23(e) provides a class action can be settled only with court approval. Such approval typically involves a two-step process consisting of (1) preliminary approval of the settlement and notice to all class members, and (2) a final fairness hearing. *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013).

Preliminary approval of a class action settlement is thus a provisional step. At the preliminary approval stage, the Court determines only whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). A settlement should be preliminarily approved if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious

6

deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Motor Fuel Temp. Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted). The standards for preliminary approval are less stringent than at the final approval stage. *In re Crocs*, 2013 WL 4547404, at *3 ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is … 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.") (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). Moreover, in evaluating a proposed settlement, "courts are not to decide the merits of the case or resolve unsettled legal questions," because "the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284-85 (D. Colo. 1997) ("[The Court's] role at this stage of the proceeding is not to evaluate the merits of the litigation, since this would contravene the Parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation.'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). *See also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the

7

> ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the Parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Although the Court will scrutinize these factors more closely at the final approval hearing, they provide a useful guide at the preliminary approval stage. *See Tuten*, 41 F. Supp. 3d at 1007-8. In consideration of these factors, preliminary approval of the Settlement Agreement is warranted.

### 1. The Proposed Settlement Was Fairly And Honestly Negotiated

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson*, 171 F.R.D. at 283 (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. *See e.g.*, Declaration of Jay Forester attached as Exhibit 3. The Parties engaged in formal discovery regarding the merits of the claims and Defendant's defenses, including a full-day mediation. The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after

significant discovery").

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of this Action in Doubt

To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Plaintiff Murray believes that her claims are strong, but recognizes that success is not guaranteed. With respect to the merits of Plaintiff's claims, Plaintiff believes that she will prevail in demonstrating that she and class members were not properly reimbursed for miles they incurred in their own vehicles on Defendant's nor paid properly for meal breaks and, therefore, are owed additional compensation. Defendant, however, contends that it fully complied with applicable meal break and minimum wage requirements. Nonetheless, while Defendant believes that its defenses are strong, it recognizes that it may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Second, the Parties dispute whether this case could be tried on a class-wide basis. Finally, the Parties dispute the applicability of potential penalties. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value of Immediate Recovery Outweighs the Possibility of Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for FLSA Class Members or for the Meal and Rest Break Class Members, or a significant judgment against Defendant which could bankrupt it, leaving nothing for either group of class members to recover. Based on these circumstances, it is prudent for the Parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial . . . Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

### 4. Counsel Believe the Settlement Is Fair and Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. The Settlement Class Meets the Requirements of Rule 23(a) For Settlement Purposes.

#### 1. Numerosity

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable. In the instant case, the Settlement Class (which includes both the FLSA Class Members and the Meal and Rest Break Class Members) consists of 545 individuals, which satisfies the numerosity requirement of Rule 23(a)(1). *See, e.g. Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974)(as few as 35 people satisfied standard); *Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 395 (D. Colo. 2010) (391 putative class members satisfied numerosity requirement).

### 2. Commonality

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). "[E]very member of the class need not be in a situation identical to that of the named plaintiff." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendant include:

a. Whether the class members were afforded statutory meal and rest breaks as required by Colorado law;

b. Whether the class members' vehicle-related expenses resulted in payment below minimum wage;

c. Whether Defendant willfully violated the Colorado Wage Claim Act; and

d. Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

### 3. Typicality

To satisfy the typicality requirement Fed. R. Civ. P. 23(a)(3), a plaintiff must show that his claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

In this action, the representative plaintiff alleges that the settlement class members were not afforded statutory meal and rest breaks as required by Colorado law or paid for all

reimbursement expenses in a manner compliant with federal and state law. As a result, Plaintiff claims that she and the other putative class members are owed additional compensation. Plaintiff contends that the legal standards and requirements for proving the subject wage and hour claims under Colorado law are the same for Plaintiff's individual claims and those of all of the putative class members. Thus, for settlement purposes, Plaintiff's claims are sufficiently typical of the putative class to satisfy Fed. R. Civ. P. 23(a)(3).

### 4.   Adequacy

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees." *In re Molycorp, Inc. Securities Litigation*, 2017 WL 4333997, at *6–7 (D.Colo., 2017) (citations omitted).

Plaintiff asserts that neither she nor her counsel have any interests antagonistic to those of the putative class members. Plaintiff has communicated regularly with Class Counsel, and that Plaintiff, through counsel, has prosecuted this action vigorously on behalf of herself and the putative class. Plaintiff's counsel has considerable experience as lead counsel in class action wage and hour litigation. Undersigned Plaintiffs' counsel submits a declaration herewith as **Exhibit 3** setting for his qualifications, experience in class and collective wage and hour litigation, and other information supporting the adequacy of his representation in this case. Thus, for settlement purposes, Plaintiff has established that Plaintiff and Class Counsel will fairly and adequately protect the interests of the putative class to satisfy Fed. R. Civ. P. 23(a)(4).

### C. **The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.**

Certification is also proper under Rule 23(b)(3) for settlement purposes. Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

#### 1. Predominance

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id.* As explained above, the common nucleus of facts in the present case derives from the alleged practices that excluded certain incurred expenses from the Plaintiffs reimbursement pay and failed to ensure meal and rest breaks as required by Colorado law. Based on these alleged violations of law, the Settlement Class Members would be entitled to the same legal remedies. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper. Additionally, class certification in this case serves the judicial economy function of Rule 23 class actions.

#### 2. Superiority

A proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. A class action is the superior method for managing litigation if no realistic alternative exists. *Valentino v.Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996). The alternative method of resolution could be hundreds of individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendant and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant

action, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement. *See Amchemr*, 521 U.S. at 620 (1997). In light of these considerations, preliminary certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

### C.     The Court Should Approve The Proposed Notice And Claim Form

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. *See Lucas*, 234 F.R.D. at 696. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001). These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A Rule 23(e) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002); *see also Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 2650037, at *3-4 (D. Colo. June 30, 2010) (notice sufficient where it informed class members of the nature of the lawsuit, their right to opt out and object, the settlement terms, and the binding effect of the settlement on settlement class

members).

The proposed Notice, Exhibit 1-A, satisfies all these elements. First, it explains the nature of the action. Second, the Notice apprises Settlement Class Members of the pendency of the settlement and informs them of material settlement terms. The Notice explains that FLSA Settlement Class Members who "do nothing" will remain in the FLSA Settlement Class but also provides these individuals the opportunity to object to the settlement and/or to opt-out/withdraw their prior consent. Similarly, the proposed Notice explains that the Meal and Rest Break Settlement Class Members who do nothing will remain in the Meal and Rest Break Settlement Class and are provided a similar opportunity to object to or opt-out of the settlement. All Settlement Class Members who do nothing following receipt of the Notice will receive a settlement payment and be bound by the settlement and all orders and judgments. The Notice describes how to object to the settlement, informs Settlement Class Members that they will receive a share of the Settlement Amount and explains factors that will be applied to account for their precise recovery. Settlement Class Members are also provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense.

Settlement Class Members will have a reasonable amount of time, 60 days from the date the notice is mailed, to object to the Settlement or mail an opt-out request. Courts have routinely found this period to be reasonable and have even approved shorter periods. *See DeJulius*, 429 F.3d at 945-47 (32 days); *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 392663, at *5 (D. Colo. June 25, 2015) (45 days).

In addition, the Notice explains to all recipients that Ms. Murray was substituted in place of Mr. Fletcher as the named Plaintiff and provides those who previously opted in the opportunity to opt out if they decide that the substitution of Ms. Murray for Mr. Fletcher changed circumstances

16

such that they do not wish to allow Ms. Murray to be their representative.[2]  As such, this Court should determine that the additional notice regarding Ms. Murray's substitution adequately protects the rights of those Plaintiffs who have previously opted in.

The Parties will file a Joint Motion for Final Approval of the Settlement within 30 days after the end of the objections period, so as to permit compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(d).  The Parties request that thereafter the Court hold a fairness hearing for the purpose of determining whether to grant final approval of the Settlement.

> **D.  The Court Should Approve the Releases for the FLSA Class Members and the Meal and Rest Break Class Members.**

The Court has asked that the Parties address the validity of the releases proposed as it pertains to the two distinct groups of Plaintiffs: those Plaintiffs who affirmatively opted in (the FLSA Class Members), and those to whom notice will be sent and will be given an opportunity to opt out under Rule 23 (the Meal and Rest Break Class Members).  Based on the Court's Order of February 18, 2020, the amended release language and Notice, however, clarify that the Rule 23 settlement class members (the Meal and Rest Break Class Members) will not be releasing FLSA claims, as they have not previously opted in.  The Meal and Rest Break Class members are only being asked to release claims under Rule 23 related to their state law claims alleging violations of Colorado law as to required meal and rest break periods.  To the extent those individuals may have

---

[2] Further, under Fed. R. Civ. P. 1, the Court has the authority to construe, administer, and employ the Federal Rules of Civil Procedure in a manner that secures "the just, speed, and inexpensive determination of every action and proceeding."  If the Court were to find that, due to the post-notice substitution of Ms. Murray, this action should not proceed as proposed, or a new, separate notice and opt-in period must occur, then that would result in a delay of likely about a year and substantial additional cost to the Parties. And, other courts have allowed substitution of the named plaintiff in class litigation, even substitution contemporaneous with approval of a class settlement and *after* the original named plaintiff agreed orally to the settlement.  *See Nunez v. BAE Systems San Diego Ship Repair Inc.*, 292 F.Supp.3d 1018, 1059-63 (S.D.Cal. 2017) (citing several cases).  The *Nunez* court specifically noted that if "events occurring after class certification render a class representative inadequate, a court may remedy the problem by substituting a new representative."  *See id.* at 1059 (quoting *Olden v. LaForge Corp.*, 472 F.Supp.2d 922, 937 (E.D.Mich. 2007)).  Further, in those cases, the Court substituted the named plaintiff and class representative against that individual's wishes.  *See id.* at 1059-63.  Here, by contrast, Mr. Fletcher requested to no longer participate and Ms. Murray affirmatively consented to becoming the substitute named Plaintiff.

had or may have FLSA claims, including claims related to mileage reimbursement, they will not be releasing such claims.

## V. CONCLUSION

The proposed Settlement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation. For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed Settlement, sign the proposed Order, approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement, and set a date for a final approval hearing.

Respectfully submitted,

| FORESTER HAYNIE PLLC | SPENCER FANE LLP |
|---|---|
| */s/ Jay Forester* <br> Jay Forester <br> 400 N. St. Paul Street, Suite 700 <br> Dallas, TX 75201 <br> Telephone: (214) 210-2100 <br> jay@foresterhaynie.com | */s/ Jacob F. Hollars* <br> Jacob F. Hollars <br> 1700 Lincoln St., Suite 2000 <br> Denver, CO 80203 <br> Telephone: 303-839-3800 <br> jhollars@spencerfane.com |
| **ATTORNEY FOR PLAINTIFFS** | Helen R. Holden <br> 2415 E. Camelback Rd., Suite 600 <br> Phoenix, AZ 85016 <br> Telephone: 602-333-5430 <br> hholden@spencerfane.com |
| | **ATTORNEYS FOR DEFENDANT** |

OP 1968173.1

## CERTIFICATE OF SERVICE

      I certify that on March 10, 2020, a true and accurate copy of the foregoing was filed and served on all counsel of record via the Court's CM/ECF system.

                                             */s/ Jay Forester*
                                             Jay Forester

OP 1968173.1