**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

SHERETTA MURRAY, individually and on behalf of similarly situated persons,

        Plaintiff,

  v.

TIPS, INC.

        Defendants.

C.A No. 1:18-cv-00937

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiff Sheretta Murray together with Defendant Tips, Inc. (together "Parties"), through their undersigned counsel, request final approval of the Settlement Agreement ("Agreement") reached by the Parties to this action, including payment of reasonable attorneys' fees and costs. As set forth below, the Agreement is fair and reasonable and should be approved by the Court.  Accordingly, the Parties respectfully request the Court issue an Order:

(1) granting final approval of the Agreement;

(2) approving distribution of the Qualified Settlement Fund, as defined in the Agreement, to the Class Members;

(3) approving a participation award payment in the amount of $5,000 to Sheretta Murray;

(4) approving attorneys' fees to Collective Counsel[1] in the amount of $179,850, which is equivalent to 33% of the Maximum Settlement Amount, and reimbursement of Collective Counsel's costs and litigation expenses, which are not to and have not exceeded $15,000; and

(5) entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

---

[1] The term "Collective Counsel" refers to the attorneys who represent the Opt-In Plaintiffs and the Settlement Class Members.

1

I.   **INTRODUCTION**

This lawsuit alleging improper delivery driver reimbursement pay and the failure to provide drivers with meal and rest breaks was settled following a mediation between the Parties through the assistance of mediator Todd McNamara of Denver, Colorado, subject to the Court's approval. The Parties filed a Joint Motion for Preliminary Approval of Settlement Agreement on (Dkt. #87) August 21, 2019. After a status hearing with the Court in January, 2020 (*see* Dkt. #92), on March 10, 2020, the Parties filed their "Joint Renewed Motion for Preliminary Approval of Settlement Agreement" (Dkt. #96). On April 13, 2020, the Court granted this motion and issued an Order that:

(1)   The prior dismissal of Colorado state law claims (Dkt. #26) was deemed to be dismissed without prejudice, *nunc pro tunc* October 6, 2018;

(2)   the Renewed Joint Motion for Preliminary Approval of Settlement Agreement (Dkt. #96.) was granted as stated therein;

(3)   the classes were certified for the purposes of settlement and are defined as:

> "FLSA Class Members" or "FLSA Settlement Class Members" are the Colorado-based delivery drivers employed by Tips, Inc. from April 21, 2015, to July 1, 2019 ("Class Period"), who have previously filed consents opting-in to this matter.
>
> "Meal and Rest Break Class Members" or "Meal and Rest Break Settlement Class Members" means the Colorado-based delivery drivers who, as of July 1, 2019, worked 32 hours a week or more at least half of the weeks during their employment with Defendant, and who do not elect to exclude themselves from this settlement;

(4)   approved the Notice of Class Action Settlement, which explained the terms of the Agreement, Delivery Drivers' rights under the Agreement, the procedure for objecting to the Agreement, and information regarding the Fairness Hearing;

(5)   approved the Claim Form, which included a consent to join the action as

2

an opt-in plaintiff under the FLSA, the release language as provided in the Agreement, and information regarding the deadline for submission;

(6) the Fairness Hearing will be held on Friday, August 21, 2020 at 1:30 p.m. in Courtroom 1601, Sixth Floor, at the Alfred A. Arraj Courthouse, 901 19th Street, Denver, Colorado 80294; and

(7) the stay ordered in this case shall continue until further order of the Court.

Pursuant to the Court's Order dated April 13, 2020 (Dkt. #98), the Parties notified all FLSA Settlement Class Members and other delivery drivers employed by Tips, Inc. from April 15, 2015 to July, 2019 who had worked 32 hours per week or more for at least half of the weeks during their employment ("Class Members") of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's April 13, 2020 Order. There are no objections to the Agreement. Similarly, no delivery driver or FLSA Class Member or Meal and Rest Break Class Member has requested to participate in the Fairness Hearing. *See generally*, **Exhibit 1** (Declaration of Third Party Administrator as to these facts). For the reasons set forth below, the Court should grant the Parties' motion.

## II.   **BACKGROUND**

This lawsuit ("the Litigation") was brought on behalf of individuals hired to deliver pizzas for Defendant Tips, Inc. (*See generally*, Fourth Amended Complaint (Dkt. #84). Plaintiff Sheretta Murray[2] and others who have opted in to the lawsuit (collectively "Plaintiffs") allege that Defendant violated the Fair Labor Standards Act ("FLSA"), the Colorado Wage Claim Act (the "Wage Claim Act"), and the Colorado Minimum Wage Act

---
[2] As more fully explained in the Court's Order dated April 13, 2020 (Dkt. #98), Sheretta Murray was substituted as sole named plaintiff in this action on or about January 25, 2019 (Dkt. #63).

3

(the "Minimum Wage Act") (together the Wage Claim Act and the Minimum Wage Act are the "Colorado state law claims") by failing to pay them and other similarly situated delivery drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendant and by failing to ensure that drivers received paid rest breaks during their shifts and were properly compensated for missed or interrupted meal breaks. (*Id.*). Defendant denies that it is liable in this action and contends that it appropriately compensated the drivers and provided them with all required meal and rest breaks.

After the filing of this action and Defendant's initial Answer, the Parties discussed whether the matter could be resolved. As a result, the Parties engaged in arms' length negotiations and jointly moved for conditional certification of an FLSA collective action (Dkt. #20). The Court granted that Motion (Dkt. #26); thereafter, the Parties agreed to participate in an alternative dispute resolution ("ADR") process. The ADR process included a full-day in-person mediation before an experienced mediator, Todd McNamara, that took place in Denver, Colorado on May 16, 2019, as well as subsequent discussions through the mediator. Prior to the mediation, the Parties exchanged information which included Defendant's production of mileage and mileage reimbursement data for the delivery drivers employed by Tips, Inc. who had opted in to the FLSA collective action. In preparation for the mediation, the Parties prepared detailed mediation statements and damages analyses. Following the in-person mediation date and at the request of Plaintiffs, Defendant supplemented the initial data production with additional information regarding the meal and rest break issue. Utilizing this data, Plaintiffs concluded they had sufficient information concerning Plaintiffs' claims and Defendants' defenses from which to reach a fair settlement of this matter. Notably, a settlement was not initially reached at the mediation; however, through the post-mediation data supplement and with the continued assistance

4

of Todd McNamara, the Parties were later able to reach an arm's-length settlement of this lawsuit on a class-wide basis. The terms of the Parties' settlement are set forth in the Parties' Agreement, which is re-attached hereto as **Exhibit 2**.

The Agreement provides an excellent outcome for the Original Opt-in Plaintiffs and Settlement Class Members. Defendant contends that its reimbursements to delivery drivers are reasonable approximations of their automobile expenses and do not cause drivers' wages to fall below the federal minimum wage. Similarly, Defendant contends that Plaintiffs and Class Members were afforded meal and rest breaks as required by Colorado law. If the Court were to accept Defendant's position, it would negate a substantial percentage of alleged damages in the case (if not all damages) and further disqualify a large number of delivery drivers who were employed by Defendant outside of the two-year statutory period. Notwithstanding these defenses, Plaintiffs were able to obtain a recovery for all eligible Settlement Class Members who were employed by Defendant during the three-year period preceding the filing of the Complaint. Plaintiffs respectfully submit that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

### III.     **THE TERMS OF THE AGREEMENT**

The Settlement Agreement contemplates two classes of individuals who are settling their claims. The first class, those who have opted-in (which includes Ms. Murray), will release all claims they have or may have related to any alleged improper mileage reimbursement rate and the missing of any meal and/or rest breaks, under either or both the FLSA and Colorado state law. Under the amended settlement agreement procedures and notice, these individuals received notice of the named plaintiff substitution and had the opportunity to opt-out and object to the settlement as well. Because those who did not

5

opt-in (the members of the second class) cannot release their FLSA claims, the second class of individuals would release only their claims under Colorado state law related to allegedly missed meal and rest breaks. The Parties negotiated the Agreement on behalf of two Settlement Classes defined as:

> "FLSA Class Members" or "FLSA Settlement Class Members" are the Colorado-based delivery drivers employed by Tips, Inc. from April 21, 2015 to July 1, 2019 ("Class Period"), who have previously filed consents opting-in to this matter.
>
> "Meal and Rest Break Class Members" or :Meal and Rest Break Settlement Class Members: means the Colorado-based delivery drivers who, as of July 1, 2019, worked 32 hours a week or more at least half of the weeks during their employment with Defendant, and who do not elect to exclude themselves from this settlement.

The members of these two subclasses are sometimes referred to in this Motion collectively as "Settlement Class Members." The Agreement allowed delivery drivers to participate in the settlement on an opt-in basis, even though a similar period had already occurred pursuant to the Parties' prior agreement, this Court's Order, and the collective action procedure of the FLSA. (Dkt. #26.). The Agreement then provides that even those delivery drivers who elected not to opt-in to either of this matter's two Notice Rounds would still be eligible for a monetary recovery.

Pursuant to the Agreement, the Settlement Amount is $545,000. (Agreement, **Ex. 2** at ¶ 3.1.) If approved by the Court, the Net Settlement Fund is $345,150, which reflects the total amount allocated to Settlement Class Members after the subtraction of the Court-approved incentive payments to named Plaintiff Ms. Murray, and Court-approved attorney's fees and costs for Collective Counsel from the Settlement Amount. The Settlement Amount is not inclusive of costs and fees in administering the settlement, as Defendants separately agreed to pay the Claims Administrator. Pursuant to the Agreement, the distribution of the Settlement Amount is as follows:

6

1. Net Settlement Fund of $345,150. Pursuant to the Settlement Agreement, as set forth in the Preliminary Approval Motion, and accounting for the Settlement notice period, this Fund is proposed to be divided:

- $258,000 to the FLSA Class Members (To be distributed on a *pro rata* basis based primarily on mileage driven and reimbursement pray received with a minimum payment of at least $66)

- $87,150 to the Meal & Rest Break Class Members. Pursuant to the Settlement Agreement, Defense Counsel is to provide data 10 days following the final approval order, so that the Parties may jointly approve final distributions, and Class Members will be mailed checks 20 days following final approval. While precise distribution to this group is TBD, the Fund is sufficient for each Class Member to receive the same minimum payment of at least $66 and for each active participant (FLSA Class Members (the original Opt-Ins) or Settlement Class Claimants (of whom there were 50)) to receive an average payment of at least $1,000.

2. Plaintiff Murray will receive $5,000 as a participation payment in recognition of the work involved and the benefits achieved by the Plaintiffs;

3. Collective Counsel will receive $179,850 in attorneys' fees and be reimbursed advanced litigation costs and expenses in an amount not to exceed $15,000; and,

4. Any amounts of the Net Settlement Fund representing the funds attributable to stale checks (those unclaimed 180 days after the initial mailing), will revert to the Parties' designated 501(c)(3) non-profit organizations (the Domino's Partner's Foundation and Towards Justice).

7

## IV. THE COURT SHOULD APPROVE THE AGREEMENT

The Parties' Settlement Agreement is a hybrid agreement, resolving both the FLSA and Colorado state law claims, which form has been previously approved in this District:

> While courts across the country have reached differing conclusions as to whether a Rule 23 state law wage claim may proceed in the same action as an FLSA collective wage claim, the most recent cases arising in this District tend toward approving such arrangements. This case is at the settlement stage and both sides have agreed to treat the settlement as a hybrid action. The putative Class Members are identical for the FLSA claims and the state [Minimum Wage Order] claims. The putative Class Members in this case are low wage employees of a restaurant, many of whom are not United States citizens. With the vehicle of class notice, most would never know of the alleged wage violations and would have never brought overtime issues to the attention of the employer. With ample current precedent to support proceeding with a hybrid class action, the court will allow such a settlement class here.

*Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016); *see also*, *Bessey v. Mand Made Pizza, Inc. et al.,* Case 1:18-cv-00938-LTB (D. CO)(Dkt. #65 (Granting final approval of a similar hybrid settlement structure covering similar claims). Many of these same reasons support the hybrid settlement as proposed by the Parties in this action, and for the reasons expressed below, the Settlement Agreement should be approved to ensure that the maximum number of Class Members obtain the relief sought.

### A. Standard for Final Approval of Class Settlements

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

 (1) whether the proposed settlement was fairly and honestly negotiated;

 (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

8

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). In consideration of these factors, approval of the Settlement Agreement is warranted. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

**1.   The Proposed Settlement Was Fairly And Honestly Negotiated**

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997) (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. Through the exchange of information, each Party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel rigorously negotiated the settlement terms (indeed, they were unable to reach agreement even after a full day of in-person mediation with an experienced mediator), such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and

9

reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

### 2. Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable.").

Plaintiffs believe that their claims are strong but recognize that success is not guaranteed. Plaintiffs believe Defendant violated the FLSA and Colorado state law by failing to pay them and other similarly situated delivery drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendant, and by failing to ensure that drivers received paid rest breaks during their shifts and were properly compensated for missed or interrupted meal breaks. Defendant, however, contends that its reimbursements to delivery drivers are reasonable approximations of the drivers' automobile expenses and do not cause wages to fall below the federal minimum wage. Similarly, Defendant contends that Plaintiffs and Class Members were afforded meal and rest breaks as required by Colorado law. Defendant is also confident that Plaintiffs would ultimately not prevail in obtaining final certification of a class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendant believes that its defenses are strong, Defendant recognizes that it may not ultimately prevail and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. Moreover, the Parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Further, Defendants contend their actions were at all times taken in good faith, negating the FLSA's liquidated damages provision. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015. The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in significant discovery, including depositions of numerous individual employees of Defendant, the named Plaintiff, and numerous Round 1 opt-in Plaintiffs. The Parties would also have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of Notice, as well as Defendant's Motion to Decertify the Class, if the Court were to certify a class. Motions for Summary Judgment would also likely be filed on Defendant's additional affirmative defenses. In the event of trial, trial testimony would involve in person testimony from representatives of Defendant, Class Members, and expert

11

Case No. 1:18-cv-00937-RM-KLM   Document 100   filed 07/31/20   USDC Colorado
pg 12 of 14

witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendant which could cause substantial financial harm or bankrupt it, leaving nothing for the Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial. … Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.")

### 4.     Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P.*

*v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89. When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

## IV.   CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally experienced mediator. For the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement.

Respectfully Submitted,

**FORESTER HAYNIE PLLC**

*/s/ Jay Forester*
**Jay Forester**
Texas Bar No. 24087532
400 N. St. Paul Street, Suite 700
Dallas, TX 75201
Telephone: (214) 210-2100
Fax: (214) 346-5909
jay@foresterhaynie.com

**ATTORNEY FOR PLAINTIFFS**

**SPENCER FANE LLP**
*/s/ Jacob F. Hollars*
**Jacob F. Hollars**
1700 Lincoln St., Suite 2000
Denver, CO  80203
Telephone: 303-839-3800
jhollars@spencefane.com

**Helen R. Holden**
2415 E. Camelback Rd., Suite 600
Pehonizx, AZ 85016

13

Telephone: 602-333-5430
hholden@spencerfane.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

This is to certify This is to certify that the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

*/s/ Jay Forester*
**Jay Forester**

14